**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
Joseph A. Gallo, Esq. (002221982)
Georgia D. Reid, Esq. (374522022)
One Riverfront Plaza, Suite 800
Newark, New Jersey 07102
Tel: (973) 494-5308
Attorneys for Defendants, Whole Foods Market, Inc. and Elite Investigations, Ltd.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

| | |
|---|---|
| MICHAEL ANDERSON, | : |
| | : CIVIL ACTION NO. 2:21-cv-12990 |
| *Plaintiff,* | : |
| | : |
| vs. | : |
| | : |
| WHOLE FOODS MARKET, INC., ELITE | : |
| INVESTIGATIONS, LTD., JOHN DOES 1-10, | : |
| JANE DOES 1-10, ABC CORPORATION 1-10 | : |
| ABC, LLC 1-10, ABC LLP 1-10, jointly, severally, | : |
| individually, | : |
| | : |
| *Defendants.* | : |

---

**LEGAL MEMORANDUM IN SUPPORT OF DEFENDANTS WHOLE FOODS
MARKET, INC. AND ELITE INVESTIGATIONS, LTD'S REPLY IN FURTHER
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

*Of Counsel and On the Brief*
Joseph A. Gallo, Esq.
Georgia D. Reid Esq.

> By: **/s/ Joseph A. Gallo, Esq.**
> Joseph A. Gallo, Esq.
> By: **/s/ Georgia D. Reid, Esq.**
> Georgia D. Reid, Esq.
>
> **LEWIS BRISBOIS BISGAARD & SMITH, LLP**
> One Riverfront Plaza, Suite 800
> Newark, NJ 07102
> (973) 494-5308
> *Attorneys for Defendants, Whole Foods and
> Elite Investigations*

Dated: April 12, 2024

## *PRELIMINARY STATEMENT*

Defendants Whole Foods Market, Inc. and Elite Investigations, Ltd. ("Defendants" or "Elite" or "Whole Foods") submit this Reply Brief in further support of Defendants' pending Motion for Summary Judgment and in reply to the Opposition submitted by Plaintiff Michael Anderson (Plaintiff or Anderson).

Plaintiff makes various allegations against Defendants arising from an October 3, 2020 stop by Elite security officers at a Whole Foods store in Newark, New Jersey.

In opposition to Defendants' Motion, Anderson makes five arguments in support of their contention that there are material facts in dispute about the "bad stop," as related to Counts One through Four of the Complaint. As explained further below, these arguments do not survive the summary judgment standard because they are either inadmissible, unsupported by expert testimony, factually incorrect, legally incorrect, purely speculative, or a combination thereof.

Plaintiff's arguments in opposition are as follows:

1. Plaintiff alleges Defendants' admitted the detainment of Plaintiff was a "bad stop;" and
2. Defendant did not sell the product Plaintiff was "accused of stealing;" and
3. There are Caucasian customers on video who "had products in their possession but were not followed and detained;" and
4. Plaintiff paid for "all of his merchandise;" and
5. Defendant "apologized" to Plaintiff for the "bad stop." (*See* Plaintiff's br. In opposition at pg. 1-2).

These arguments do not hold. Anderson has no liability expert to opine as to whether or not the detainment of Plaintiff was a "bad stop." If a representative of Whole Foods suggested it was a "bad stop," this is amounts only to inadmissible opinion testimony at best, and is not admissible expert testimony. The evidence as applied to the law shows there was probable cause and reasonable suspicion to briefly detain Plaintiff based on the bulge and visible product in his

1

pocket, regardless of the outcome and if the product was sold by Defendant or not.  The fact that persons of other ethnic groups were shopping at the same time as Plaintiff is hardly dispositive – in fact the evidence in the record contradicts any speculation or unsupported belief by Anderson has that he was a victim of discrimination.  Furthermore, an apology is entirely subjective and is not an admission of liability.

As to Counts Five and Six, Plaintiff also attempts to argue that Defendant Whole Foods is "vicariously liable" for the alleged tortious conduct of Defendant Elite Investigations.  Plaintiff's argument fails on two levels.  One, Elite's Contract with Whole Foods clearly states that Elite was solely responsible for the hiring, qualifications, appropriate training, and payment of personnel for work at Whole Foods.  Plaintiff does not rebut this.  Second, there is not one scintilla of evidence to show that Elite committed any wrongdoing.  Elite committed no torts by which one could find Whole Foods liable.

As for Plaintiff's damages – he has submitted no evidence to show he has been actually harmed in any way.  All negligence claims must therefore be dismissed with prejudice at this stage.

Finally, as to Count Seven Plaintiff has failed to show any fact to support a defamation or slander per se claim.  Not only has Plaintiff failed to meet the elements of these claims under the law, there is no factual evidence that Plaintiff was harmed by defamation or slander per se.

For all the aforementioned reasons, and for the reasons set forth in detail below, Plaintiff cannot proffer any legitimate factual support necessary to sustain or prove any allegations against Defendants.  Plaintiff has no admissible evidential support which would create a genuine issue of material fact on any of these counts.  Summary judgment is, therefore, warranted in this matter.

## *LEGAL ARGUMENT*

**I.**     **THERE IS NO EVIDENCE THAT THE INCIDENT WAS BASED ON DISCRIMINATION OR LACKED PROBABLE CAUSE UNDER THE APPLICABLE STANDARD; THEREFORE, SUMMARY JUDGEMENT IS WARRANTED ON COUNTS ONE (Law Against Discrimination), TWO (False Arrest), THREE (Assault and Battery) AND FOUR (Negligence)**

Plaintiff submits that there is enough evidence in the record to establish questions of fact that Defendants subjected Plaintiff to false imprisonment/arrest and that this occurrence was based on discrimination.  There are not.

### A. False Imprisonment

Plaintiff failed to cite the New Jersey model civil jury charge for false imprisonment in their opposition.  That jury charge – for shoplifting – states, in relevant part, as follows:

> 3.20 FALSE IMPRISONMENT (FALSE ARREST) (Approved 6/89) F. SHOPLIFTING (N.J.S.A. 2C:20-11) It is the law of this State that a law enforcement officer, or a **special officer**, or a **merchant**, who has **probable cause to believe that a person has willfully concealed unpurchased merchandise may, for the purpose of attempting to recover the merchandise, take the person into custody and detain him/her in a reasonable manner for not more than a reasonable time.**
>
> …
>
> **Probable cause in this regard means that the facts and circumstances known to the officer or merchant were those which would lead a reasonably cautious person to believe that plaintiff had willfully concealed unpurchased merchandise,** and that he/she could attempt to recover the merchandise by taking plaintiff into custody and control. Probable cause must be more than mere conjecture or unfounded suspicion.
>
> …
>
> N.J.S.A. 2C:20-11(e) states: A law enforcement officer, or a special officer, or a merchant, who has **probable cause** for **believing** that a person has willfully concealed unpurchased merchandise and that he/she can recover the merchandise by taking the person into custody, may, for the purpose of attempting to effect recovery thereof, take the person into custody and detain him/her in a reasonable manner for not more than a reasonable time, and **the taking into custody by a law enforcement officer or special officer or merchant shall not render such person criminally or civilly liable in any manner or to any extent whatsoever.**
>
> …

3

> **A merchant, who causes the arrest of a person for shoplifting, as provided for in this section, shall not be criminally or civilly liable in any manner or to any extent whatsoever where the merchant has probable cause for believing that the person arrested committed the offense of shoplifting. (Emphasis supplied)**

For the reasons set forth in Defendants' moving papers, probable cause existed in this matter for a reasonable security officer under the circumstances to believe Plaintiff should be questioned and/or detained in connection with the "bulge" in his pocket which looked, to any reasonable onlooker, to be merchandise. (*See*, still-frame images, attached as **Exhibit G** to the March 8, 2024 Certification of Brian W. Brown, Esq. previously submitted.). Plaintiff admitted that he was told he was being stopped because of a suspicion of shoplifting the oil. (*See,* **Exhibit E**, *217:2-18* to the March 8, 2024 Certification of Brian W. Brown, Esq. previously submitted.). *How could the security officers know what was in Plaintiff's pocket until they stopped and questioned him?*

In opposition, Plaintiff suggests that post-incident internal emails between Whole Foods employee Rachel Malish and Patch editor Eric Kiefer are somehow proof that there was a violation of Whole Foods protocol in stopping and detaining Plaintiff and that this is somehow dispositive. (*See* Roberts Certification at **Ex. 5**). Malish's email is not an admission of liability. It is inadmissible lay-witness opinion testimony at best. Plaintiff has not named Rachel Malish as an expert on shoplifting or merchant security or any other kind of liability expert. Plaintiff has not named a liability expert.

Finally, Anderson's argument that the "stop" did not reveal he actually shoplifted equates with an absence of probable cause, is irreparably flawed logic. Not every stop, detention, or arrest made on reasonable suspicion or probable cause must result in an actual crime having been committed. Per the model Civil Jury Charge (*supra*), a merchant, who causes the arrest of a person

for shoplifting, as provided for in this section, ***shall not be criminally or civilly liable in any manner or to any extent whatsoever where the merchant has probable cause.*** Plaintiff does not dispute there was probable cause for believing Plaintiff shoplifted – this is not a question of fact. There was a bulge in his sweatpants pocket.

Therefore, Plaintiff has no facts in evidence or vehicle by which to prove that Defendants were, in any way, liable to Plaintiff for false imprisonment.

### B.    Discrimination

Without any specificity or comparison, Plaintiff blanketly states "video footage and pictures show Caucasian customers who had products in their possession but were not followed and detained" as evidence that Plaintiff was followed and detained due to his race. This is not evidence of discrimination. There is no evidence that there is any basis for the security guard to approach anyone else regarding a suspicion of shoplifting. Just because there were Caucasian people shopping is not proof enough that Plaintiff was singled out because of his race. In fact, the video shows several ***other*** minority shoppers who were ***not questioned*** for shoplifting. By Plaintiff's faulty logic, the security officer would have to stop and question all of the minority shoppers, if the reason the Caucasian shoppers were not stopped was due to skin color and discrimination. (Note also that the security officer who stopped and questioned Plaintiff was himself a member of a minority group).[1]

Plaintiff claims Defendants avoided mentioning emails between Odette Jarret and Leslie Lorquet because they show a material issue of fact. (See Plaintiff's Br. in Opposition at pg. 10, *see*

---

[1] Further, Plaintiff's interpretation of the thought process of the security officers is not based on personal knowledge which is violative of Fed. R. Evid. 602 or evidence in the record. Anderson provides no support in the record that the reason Caucasian shoppers were not singled out was based on the security officers' discriminatory motives.

5

*also* Roberts Certification **Ex. 1**). They do not. Firstly, the email from Ms. Jarret indicates that Anderson is the individual who caused a scene at the grocery store by yelling and drawing attention to himself. Next, the email states it was a "bad stop," but "bad stop" is not a term defined by any expert in this matter and, therefore, is ***inadmissible***.

Therefore, Plaintiff has no facts in evidence or vehicle by which to prove that Defendants were, in any way, liable to Plaintiff for discrimination.

C.    **Assault and Battery**

Plaintiff has no evidence that he was subjected to a battery in this matter. Nowhere in the video footage was Anderson ever detained or forcibly touched by the employees of Elite Investigations or Whole Foods. No other evidence in the record shows Plaintiff being touched by Defendants. No witnesses have been named to testify there was a battery. Plaintiff's counterstatement makes no mention of Elite Investigations or Whole Foods employees forcibly touching him.

Anderson also has no evidence that he was subjected to an assault. Plaintiff has no expert to opine on whether or not the manner in which he was approached and asked to come back into the store (as seen on the video evidence) violated any industry standard and was not reasonable under the circumstances.

Therefore, Anderson has no facts in evidence or vehicle by which to prove that Defendants were, in any way, liable to Plaintiff for assault and battery.

D.    **Negligence**

As stated in Defendants' moving papers, Anderson cannot prove any elements of negligence – duty, breach, causation or damages - in this matter. Plaintiff would need an expert to opine on the duty of security guards and reasonable conduct under the circumstances, would

6

need to prove that the security guards in this matter breached that duty, and then would need to connect damages directly to said breach, proving said damages with a damages expert. Plaintiff has no such liability or damages experts.

In opposition, Anderson argues that the emails indicating there was a "bad stop" are proof of a breach of a duty. (See Plaintiff's Br. in Opposition at pg. 24, *see also* Roberts Certification **Ex. 1**). The author of said email (Odette Jarret – a Whole Foods employee) has not been identified as a liability expert on shoplifting or merchant security and loss prevention. Next, Plaintiff writes that Whole Foods did not sell lock oil found in Plaintiff's pocket – but does not explain, at all, how this is a breach of a duty of care. Again - *how could the security officers know what was in Plaintiff's pocket until they stopped and questioned him?* Finally, in response to Plaintiff's argument that the email from Rached Malish to the media is proof of a breach of a duty of care, this is again not admissible expert testimony (Defendants submit it is merely an email in which a representative of Whole Foods was making a public-relations statement).

Finally, as to Plaintiff's alleged damages, Plaintiff has no evidence to establish a causal link between the alleged breach and these damages. Just because someone has cluster headaches *after* an incident is not evidence that said incident *caused* the cluster headaches and is merely a *post hoc ergo propter hoc* logical fallacy. Plaintiff is required to prove, with expert testimony, that there is a causal connection and permanency. Medical records indicating cluster headaches are insufficient evidence to survive Defendants' motion for summary judgment.

As to the certifications of Kevin Burrows and Kendrick Nguyen, (See, Roberts' Certification at **Exhibits 6 and 7**, respectively) these certifications simply state these two individuals decided to not work with Plaintiff after the incident. There is no quantification of

7

damages as a foundation for a claim for economic loss and Anderson has no expert to opine on any claimed economic loss.

Summary judgment is, therefore, warranted in this matter.

## II. PLAINTIFF FAILED TO SHOW ANY EVIDENCE OF NEGLIGENCE OR TORTIOUS CONDUCT BY ELITE INVESTIGATIONS BY WHICH WHOLE FOODS COULD BE FOUND LIABLE; THEREFORE, SUMMARY JUDGEMENT IS WARRANTED ON COUNTS FIVE ( Vicarious Liability) AND SIX (Negligent Hiring /Retention)

If, *arguendo*, Elite Investigations committed a tort (which they did not, and which Plaintiff certainly has no proof of), Whole Foods is certainly not vicariously liable for said tort. The evidence is clear that Elite Investigations is an independent contractor. (*See* Elite/Whole Foods contract, **Exhibit I** to the March 8, 2024 Certification of Brian W. Brown, Esq. previously submitted).

Anderson argues that there are facts that indicate Elite is more of an "employee" than an independent contractor because "loss prevention is part of . . . Whole Food's regular business." (See Plaintiff Br. in opposition, pg. 22). Plaintiff has no expert to opine as to loss prevention programs at a nation-wide grocery retailer and whether this is standard industry practice. A loss prevention program at Whole Foods does not prove that Elite was not an independent contractor. Plaintiff has cited no case law to suggest otherwise.

In Reply, Defendants respectfully submit that Elite – like many other security agencies – was an independent contractor, under the common law. In determining whether a hired party is an employee under the general *common law of agency*, Courts generally consider the following factors:

> the hiring party's right to control the manner and means by which the product is accomplished . . . the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730 (1989) at 751-752 (footnotes omitted).

Here, the contract clearly indicates that Elite – not Whole Foods – was solely responsible for the hiring, qualifications, appropriate training, and payment of personnel. See **Ex. I**. to the March 8, 2024 Certification of Brian W. Brown, Esq. previously submitted. Further, none of Elite's employees were considered employees of Whole Foods and Elite was solely responsible for the supervision, management, reviewing of their qualifications…or similar charges associated with the employment of its employees and Elite's compliance with all laws relating to is employees. See **Ex. I**. to the March 8, 2024 Certification of Brian W. Brown, Esq. previously submitted.

Clearly, Whole Foods did not have the right to control the manner and means by which Elite trained their employees and security guards. Whole Foods did not assign additional projects to Elite. Whole Foods did not deal with the payment of Elite's employees. There is little to no entanglement between Whole Foods and Elite other than the independent contractor relationship. Anderson attempts to create a flimsy connection between the entities based on the fact that Whole Foods – a global retailer – has a loss protection department and policy for asset protection, and that there is some communication between the entities. The contract is clear and no further analysis is needed.

For these reasons, Plaintiff cannot survive Defendants' motion for summary judgment on Counts Five and Six.

10

### III.  PLAINTIFF HAS FAILED TO MEET THE ELEMENTS OF A DEFAMATION OR SLANDER PER SE CLAIM; THEREFORE, SUMMARY JUDGMENT IS WARRANTED ON COUNT SEVEN (Invasion of Privacy/ Defamation Slander per se)

#### A.  Defamation

As stated in Defendants' motion, to prove defamation, a Plaintiff must show, in addition to damages, 1) the assertion of a false and defamatory statement concerning another; 2) the unprivileged publication of that statement to a third party; and 3) fault amounting at least to negligence by the publisher. DeAngelis v. Hill, 180 N.J. 1 (2004).

Here, Anderson submits that Defendants "falsely accused" Plaintiff of shoplifting and that Plaintiff has met the elements of a prime facie case of defamation under New Jersey law. However, Plaintiff has failed to meet a single element of a defamation claim. The sum and substance of Plaintiff's argument in opposition is a list of the elements of a defamation claim under Professional Recovery Services, Inc. v. General Elec. Capital Corp., 642 F. Supp. 2d 391 (D.N.J. 2009),[2] and a statement that Plaintiff is a "private person" under the law of defamation. Since Plaintiff has set forth the six elements in his opposition, Defendant will reply to same below.

As to element one – a defamatory statement of fact on the part of *Defendant* – Plaintiff cannot meet his burden of proof here. All the evidence shows it was Anderson *himself* who opened the door to any statements being made about his so-called "false arrest" to the media. Plaintiff reached out to the Patch.com editor, Mr. Kiefer, because he wanted to tell his tale. (See **Ex. M**, Kiefer transcript 13:1-17 and 58:6-59:7. to the March 8, 2024 Certification of Brian W. Brown, Esq. previously submitted and **Ex. N**, the email to Mr. Kiefer in which Plaintiff writes *"Whole*

---

[2] (1) a defamatory statement of fact; (2) concerning the plaintiff; (3) which was false; (4) which was communicated to a person or persons other than the plaintiff; (5) with actual knowledge that the statement was false or with reckless disregard of the statement's truth or falsity or with negligence in failing to ascertain the truth or falsity; and (6) which caused damage.

*Foods . . . is getting sued and boycotted for discrimination of Black customers. They assaulted and harassed a Black shopper for stealing, which he did not, in front of the entire store on Saturday night."* . to the March 8, 2024 Certification of Brian W. Brown, Esq. previously submitted)

On the other hand, Plaintiff has offered no facts in the record to show Defendants made any defamatory statements to the press, nor anyone else. As such, Anderson also cannot prove and has set forth no facts that meet elements 2 through 5 – that a statement was made about him that was known to be false and communicated to anyone or published to anyone besides the Plaintiff. As to the last element - damages – Anderson has not presented any evidence quantifying his damages that were allegedly caused by defamation. As noted in Paragraph 3 in Defendants' reply to Plaintiff's counterstatement of material facts, Plaintiff served no expert reports in support of his defamation claims (nor any claims) against Defendants and cannot prove any harm.

For the aforementioned reasons, and the reasons set forth in Defendants' motion for summary judgment, the defamation claim against Defendants should be dismissed, with prejudice.

### B. Slander Per Se

In an attempt to survive summary judgment as to a slander *per se* claim, Plaintiff seems to suggest that Defendants slandered Plaintiff when Elite security guards "surrounded" Plaintiff in front of "other customers" and that this meets the elements of a slander claim *per se* because it was an accusation of committing a criminal offense.[3]

In order to establish a prima facie case of defamation (whether denominated libel or slander), a plaintiff must show that defendant communicated to a third person a false statement

---

[3] Notably, Plaintiff was not arrested by police officers and was, therefore, not accused publicly of committing any crime. Nor were any of the "other customers" to support a claim Anderson's reputation in the community was damaged.

12

about plaintiff that tended to harm plaintiff's reputation in the eyes of the community or to cause others to avoid plaintiff. Lynch v. New Jersey Educ. Ass'n, 161 N.J. 152, 164-65, 735 A.2d 1129 (1999); Feggans v. Billington, 291 N.J. Super. 382, 390-91, 677 A.2d 771 (App.Div.1996). To survive a motion for summary judgment, Plaintiff must also show all elements of a slander claim are met: (1) defamatory character of the communication; (2) publication; (3) the communication refers to the plaintiff; (4) the third party's understanding of the communication's defamatory character; and (5) injury. Here, whether Plaintiff's claim of slander falls into the category of slander *per* se or slander *per quod,* Plaintiff has not proffered appropriate evidence to show slander to begin with.

Anderson cannot meet his burden of proof here because slander requires more than a subjective opinion by Plaintiff of what the other customers may have been thinking. Anderson cannot prove and has submitted no proof that other customers heard or oversaw anything at all let alone a defamatory statement. Even if there was something said by Defendants which was defamatory in nature (Plaintiff has no evidence to support this, only speculation), Plaintiff has not identified or deposed any of the other customers who allegedly witnessed this – thus, there are no facts at issue to allow Plaintiff to survive summary judgment. Anderson cannot possibly prove that because Elite security guards "surrounded" him the other customers thought Plaintiff had committed a crime or that the customers understood this to be defamatory in nature.

For the aforementioned reasons, and the reasons set forth in Defendants' motion for summary judgment, the slander per se claim against Defendants should be dismissed, with prejudice.

13

## CONCLUSION

For the reasons set forth herein, and for the reasons set forth in Defendants' Motion for Summary Judgment, it is respectfully submitted that Defendants' motion be GRANTED.

By: /s/ Joseph A. Gallo, Esq.
　　Joseph A. Gallo, Esq.
By: /s/ Georgia D. Reid Esq.
　　Georgia D. Reid, Esq.

**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
One Riverfront Plaza, Suite 800
Newark, NJ 07102
(973) 494-5308
*Attorneys for Defendants, Whole Foods and Elite Investigations*

Dated: April 12, 2024